IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA POWER COMPANY, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 2:12-cv-3798-WMA |
| } | |
| CALHOUN POWER COMPANY, LLC, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Defendant Calhoun Power Company, LLC ("Calhoun Power") removed the above-entitled action to this court from the Circuit Court of Jefferson County, Alabama. Calhoun Power alleges (1) that there is diversity jurisdiction pursuant to 28 U.S.C. § 1332; (2) that there is federal question jurisdiction pursuant to 28 U.S.C. § 1331; and (3) that the Federal Power Act ("FPA"), 16 U.S.C. § 825(p), grants jurisdiction to this court. Plaintiff Alabama Power Company ("Alabama Power") has moved to remand the case, denying that this court has subject matter jurisdiction.

**Background Information**

On October 5, 2012, Alabama Power filed this complaint seeking a declaratory judgment and injunctive relief. The complaint asks for a declaration of rights under a Power Purchase Agreement ("PPA") that Alabama Power and Calhoun Power signed in September of 2000. Under the agreement, Calhoun Power receives monthly payments from Alabama Power for the electricity produced at Calhoun Power's

1

Eastaboga, Alabama plant. The PPA states that it "shall be governed by and construed in accordance with the laws of the State of Alabama." Both parties have performed their duties under the contract since it was executed.

Calhoun Power has notified Alabama Power of its belief that it is entitled to a separate payment for the reactive power associated with the production of electricity, and that it plans to institute a Federal Energy Regulatory Commission (FERC) proceeding to reach this end. Alabama Power asserts that the PPA "plainly prohibits this FERC filing." Its complaint seeks an order declaring:

> (1) APCo has no duty to pay additional amounts for reactive power, which is necessary for Calhoun to perform as required by the Agreement, but something for which Calhoun may not seek additional payment; (2) Calhoun cannot seek to have the Agreement effectively amended by initiating a FERC proceeding, because the Agreement prohibits such unilateral action by Calhoun; and (3) Calhoun must pay APCo's costs associated with this dispute.

Alabama Power complaint ¶ 4.

Calhoun Power was served with the complaint on October 5, 2012, and timely removed it on November 2, 2012.[1] Calhoun Power's notice of removal asserts that there is diversity jurisdiction pursuant to 28 U.S.C. § 1332, federal question jurisdiction pursuant to 28 U.S.C. § 1331, and that the FPA, 16 U.S.C. § 825p,

---

[1] *See* 28 U.S.C. § 1446(b) (requiring a notice of removal of a civil action to be filed within 30 days after defendant receives service).

2

gives federal district courts jurisdiction over claims like this one. Calhoun Power claims that this is a federal case rather than a state law case because although the complaint is framed in terms of the PPA, it is actually "an attempt to attack, modify, or nullify rights granted to Calhoun Power in the May 2001 Interconnection Agreement filed with FERC...and accepted by FERC." Calhoun Power quotes a portion of the Interconnection Agreement ("IA") that says "[i]n addition, [Calhoun Power] shall have the right to seek compensation for reactive power or other generation-based ancillary services pursuant to a FERC-approved tariff." Doc 1 *quoting* Ex. 1 to Ex, C. § 4(c) of Appendix A to the IA. This portion of the FERC-approved IA provides the basis for much of Calhoun Power's argument.

**Discussion**

The burden is on the removing party to establish that the federal court has subject matter jurisdiction. *See Williams v. Best Buy Co., Inc.*, 269 F. 3d 1316 (11th Cir. 2001). Federal courts are courts of limited jurisdiction; therefore, this places a heavy burden on a removing defendant. Accordingly, removal statutes are construed narrowly, and doubts about removal are resolved in favor of remand. *Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

**Diversity Jurisdiction**

In order for there to be diversity jurisdiction, 28 U.S.C. §

1332 requires that "the matter in controversy exceeds the sum or value of $75,000...and is between citizens of different states." Calhoun Power has not demonstrated that its citizenship is diverse from that of Alabama Power.

Calhoun Power is a limited liability company ("LLC"); therefore it is a citizen of any state of which any member of the company is a citizen. *See Rolling Greens, MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Its principal place of business and state under whose laws it is organized do not matter. Regarding its citizenship, CPC says this:

> Calhoun Power's sole member is Calhoun Power Company Holdings, LLC, a limited liability company organized under Delaware law with its headquarters in East Brunswick, New Jersey. Its operations are directed, controlled, and coordinated by its officers from the state of New Jersey. None of its officers have offices located in or direct the company's activities from Alabama. As such, Calhoun Power Company Holdings, LLC is not a citizen of the State of Alabama.

Defendant's notice of removal at paragraph 9 (internal citations removed). Calhoun then elaborates further on its citizenship in a footnote:

> Calhoun Power Company Holdings, LLC's sole member is Calhoun Generating, LLC, a limited liability company organized under Delaware law with its headquarters in and operations directed, coordinated and controlled by its officers from the State of New Jersey. Calhoun Generating, LLC's members are LS Power Calhoun Blocker II, LLC and LS Power Equity Partners II, LLP. These are Delaware entities with their headquarters in and operations directed,

> controlled and coordinated by their officers from New York. These entities have their own members, and none of the members, including any additional limited liability companies or other unincorporated associations, are citizens of Alabama or have any members who are citizens of Alabama.

Defendant's notice of removal, Doc 1 at fn. 2 (internal citations omitted). Despite defendant's efforts to inform the court of the headquarters and laws under which each LLC is organized, this information is irrelevant to a determination of citizenship.

The pertinent information Calhoun Power should have provided is the citizenship of LS Power Calhoun Blocker II, LLC ("LPCB") and LS Power Equity Partners II, LLP ("LPEP"). An LLP's citizenship is also determined by the citizenships of its partners. *See Carden v. Arkoma Assocs.*, 494 US 185, 195-96 (1990). Because Calhoun Power has the burden of proving citizenship, it should have listed each of LPCB and LPEP's members and their citizenship. Simply stating that no members are citizens of Alabama is not sufficient. "To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company and all the partners of the limited partnership." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F. 3d 1020 (11th Cir. 2004). In *Rolling Greens*, the Eleventh Circuit went on to remand the case as a result of defendant's failure to allege adequately the citizenships of the members and partners of the parties.

5

Calhoun Power argues that Alabama Power is incorrect in arguing that *Rolling Greens* supports their argument because the issue in that case was not a "deficiency regarding fourth tier ownership entities." It is true that *Rolling Greens* does not present the same issue as this case in which Calhoun Power's sole member is an LLC, (Calhoun Power Company Holdings LLC - "CPCH") whose sole member is an LLC (Calhoun Generating, LLC - "CG"), whose two members are an LLC and an LLP (LS Power Calhoun Blocker II, LLC and LS Power Equity Partners II, LLP). However, *Rolling Greens* is still highly instructive. A determination of CPC's citizenship looks to its member, CPCH. Since it is an LLC, CPCH's citizenship is determined by its member, CG. Also an LLC, CG's citizenship is then determined by its members: LPCB and LPEP. Thus to demonstrate diverse citizenship, CPC should have listed the citizenship of each member of LPCB and LPEP. Since CPC did not do this, it did not carry its burden of proving that there is diversity of citizenship.

Additionally, the amount in controversy requirement is not satisfied. It is well settled in the Eleventh Circuit that "[w]hen a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F. 3d 1069, 1077 (11th Cir. 2000). The Eleventh Circuit elaborated on what this means: "[i]n other words, the value of the requested injunctive relief is the monetary value of the benefit that would

6

**flow to the plaintiff if the injunction were granted.**" *Id.* (emphasis added). Plaintiff seeks an injunction that, under the PPA, Calhoun Power cannot file a rate tariff with FERC. If this injunction is put in place, no new monetary value will flow to plaintiff.

Calhoun Power argues that if it wins and is allowed to proceed with a FERC proceeding, it could be allowed to charge Alabama Power in excess of an extra one million dollars a year. However, the Eleventh Circuit has held that the value of a declaratory action is judged by the value a **plaintiff** will receive if an injunction is **granted**, not if it is denied. *See Cohen*, 204 F. 3d 1077. Furthermore, neither party will receive any money from this claim; any potential benefit or loss to either party would only come following a FERC proceeding. Therefore, any recovery is speculative. *See Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F. 3d 216 (1997) (addressing speculative benefits that do not satisfy the jurisdictional amount).

It is possible that Calhoun Power could provide more information to demonstrate that there actually is diversity of citizenship; however, that endeavor would be fruitless because the amount in controversy requirement of 28 U.S.C. § 1332 is not satisfied.

**Federal Question Jurisdiction**

Calhoun Power also asserts that there is federal question jurisdiction. Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is well established that a claim "arises under" federal law "when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank,* 299 U.S. 109, 112-3 (1936) The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, federal jurisdiction still exists if the plaintiff engages in artful pleading and attempts to avoid federal jurisdiction by "omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 US 1, 22 (1983).

Calhoun Power argues that Alabama Power engaged in artful pleading because in a determination of the parties' rights, it is necessary to look at the parties' FERC-approved IA. Calhoun Power asserts that since the IA has been filed with and accepted by FERC, it is "the equivalent of a federal regulation." Doc. 7 at 4 *citing California ex rel Lockyer v. Dynegy*, 375 F. 3d 831 (9th Cir. 2004). However, Alabama Power is looking for a determination of rights under the PPA; therefore, this is a contract dispute governed by Alabama state law. Calhoun Power asserts that the rate schedules

filed with FERC have to be interpreted and are necessarily implicated, but the mere fact that a removing defendant introduces a federal issue and tries to recharacterize the complaint does not create federal jurisdiction. *See Louisville & N.R. Co. v. Mottley*, 211 U.S. 149 (1908). Alabama Power's omission of the IA from its complaint does not amount to artful pleading. Alabama Power is asking the state court to make a determination of rights under state contract law; it is not up to Alabama Power to include every possible federal issue that Calhoun Power might inject to support its position, and the fact that Calhoun Power has introduced a federal issue does not create federal jurisdiction.

In an alternative attempt to demonstrate that the FERC-approved IA creates federal jurisdiction, Calhoun Power states "[t]his case is the same as *Grable*." It is referring to *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). Calhoun Power's statement indicates a misunderstanding of the holding in *Grable*. Calhoun Power asserts that the case is the same because this case involves "an important issue of federal law that sensibly belongs in federal court." Doc. 7 *quoting Id.* However, the mere fact that there is an important federal implication does not mean that there is federal jurisdiction. In *Grable*, the court held that there was federal jurisdiction because there is a national interest in having federal tax issues litigated in federal court. *Id.* This was a narrow holding that the Court

9

reached because of the importance of uniformity in tax law. It was not meant to give every party seeking federal jurisdiction the argument that its issue is an "important federal issue,"[2] and it does not create federal jurisdiction in this case.

**Federal Power Act**

Calhoun also argues that the Federal Power Act (FPA) creates federal jurisdiction for this type of case. It states:

> The District Courts of the United States. . . shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation or order thereunder.

16 U.S.C. § 825p.  The FPA does not grant jurisdiction to this court. The claim is based on a contract and does not claim a violation or a liability arising out of the FPA or another related regulation.

Calhoun Power argues that in a similar case, Alabama Power took the position that the FPA created federal jurisdiction because there were FERC licenses at issue. *See Otwell v. Alabama Power Company*, Civil Action no.: 6:11-cv-02139 (N.D. Ala. 2011). However,

---

[2]The Court stated "[b]ecause arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Id*. at 314. The Court then goes on to discuss the huge importance of federal tax matters and how this holding will affect such few cases that it will have "only a microscopic effect on the federal-state division of labor." *Id.* at 315.

that case varied from this one. In *Otwell,* the court denied plaintiffs' motion to remand because the complaint invoked the "limits set forth in the controlling FERC license" and sought an injunction prohibiting Alabama Power from violating the FERC license. *Id.* The case before this court does not seek to "enforce any liability or duty created by, or to enjoin any violation," 16 U.S.C. § 825p, of a FERC license. It seeks a declaration of each party's rights under a contract that is governed by state law. The IA approved by FERC is merely something injected by the defendant as a defense of their position.

**Conclusion**

Alabama Power filed a complaint regarding a contract governed by state law. Calhoun Power has not met the requirements for establishing diversity jurisdiction, and its attempt to raise a federal issue that it claims is essential is not sufficient to establish federal question jurisdiction. Therefore, Alabama Power's motion to remand will be granted by a separate order.

DONE this __28th__ day of December, 2012.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE